IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER MICHAEL SQUIRES,
    *Plaintiff*,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    *Defendant*

No. 23-cv-296-ABA

## MEMORANDUM OPINION

Plaintiff Christopher Squires filed this action challenging the decision of the Social Security Administration ("SSA" or "Commissioner") to deny his claim for Disability Insurance Benefits. Compl., ECF No. 1. The parties have consented to proceed before a magistrate judge. *See* ECF No. 6; 28 U.S.C. § 636; Loc. R. 301. The Court has considered the record in this case, ECF No. 8, and the parties' briefs, ECF Nos. 11, 15, and 16, and finds that no hearing is necessary. Loc. R. 105.6. This Court must uphold the SSA's final decision if it is supported by substantial evidence and the SSA employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, and for the reasons below, the Court denies Plaintiff's request and affirms the Commissioner's decision.

I.     **PROCEDURAL BACKGROUND**

Plaintiff protectively filed an application under Title II of the Social Security Act, for Disability Insurance Benefits, on September 20, 2019, alleging that he became disabled within the meaning of the Social Security Act, *see infra*, as of October 14, 2018, due to Lyme Disease with Bartonella infection, gastroesophageal reflux disease, and chronic pain. Transcript of the Administrative Record ("Tr.") at 15, 241-242, 255, ECF No. 8. The SSA denied Plaintiff's claim

initially and on reconsideration. Tr. 103-120. On December 30, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 38-65. On April 11, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any relevant time, either as of the alleged onset date or at any point thereafter. Tr. 12-27. The Appeals Council denied Plaintiff's request for review. Tr. 1-6. Thus, the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); 20 C.F.R. § 422.210(a).

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate whether a claimant is disabled using a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of [an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1]; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff "ha[d] not engaged in substantial gainful activity since October 14, 2018." Tr. 17.

Step two looks to whether an impairment is "severe," meaning whether the impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20

C.F.R. § 404.1520(c). Here, the ALJ found that Plaintiff suffered from several "severe impairments," specifically a "history of back and neck surgery and bony overgrowth of the bilateral second distal interphalangeal joints." Tr. 17. The ALJ found that other impairments that Plaintiff complained of, or that were reflected in his medical records, were not severe within the meaning of § 404.1520(c), including his various gastrointestinal impairments, urinary and groin pain issues, swelling and tenderness in his left collarbone, mild right carpal tunnel syndrome, left lateral epicondylitis, Lyme disease, and depression and anxiety. Tr. 18-19. The ALJ found that Plaintiff's assertions of bartonella, babesia, Rocky Mountain spotted fever, and Epstein-Barr virus were not "medically determinable," meaning they do not "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." Tr. 19; 20 C.F.R. § 404.1521.

At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. 20

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), which she used at steps four and five. Tr. 21; 20 C.F.R. § 404.1520(e). The concept of residual functional capacity assesses "the most the claimant can still do despite [claimant's] physical and mental limitations that affect [claimant's] ability to work." *Lewis v. Berryhill*, 858 F.3d 858, 861-62 (4th Cir. 2017) (cleaned up, quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). Here, the ALJ determined that Plaintiff retained sufficient RFC "to perform light work as defined in 20 CFR 404.1567(b)," with the additional limitations that he can only "frequently balance and occasionally perform all other postural activities" and "can frequently handle" with both hands. Tr. 21. In this context,

"frequently" means "occurring from one-third to two-thirds of the time" while "occasionally" means "occurring from very little up to one-third of the time" S.S.R. 83-10.

At step four, the ALJ determined that Plaintiff could perform past relevant work "as a Merchandise Manager (DOT 185.167-034, sedentary exertional level, SVP-7) and a Door-to-Door Sales Representative (DOT 291.357-010, light exertional level, SVP-2)." Tr. 24.

At step five, the ALJ concluded that, alternatively, Plaintiff could also perform other jobs that exist in significant numbers in the national economy. Tr. 25-26.

Having carefully applied the requisite five-step analysis, the ALJ concluded that Plaintiff was not disabled. Tr. 26.

## III. LEGAL STANDARD

A claimant seeking benefits under the Social Security Act "bears the burden of proving that he is disabled within the meaning of the [Act]." *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). A disability determination must be affirmed if the ALJ applied the correct legal standards and the ALJ's factual findings are supported by substantial evidence. *Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* at 260 (quoting *Craig*, 76 F.3d at 589).

## IV. ANALYSIS

Plaintiff does not challenge the ALJ's determinations at steps 1 through 3. Instead, Mr. Squires challenges solely the ALJ's RFC determination that despite his physical impairments he retained sufficient residual functional capacity to "perform light work" with the added

4

restrictions that he can only "frequently balance and occasionally perform all other postural activities" and "frequently handle, bilaterally." Tr. 21. Specifically, Plaintiff argues that the ALJ's physical RFC assessment was not supported by substantial evidence because the record lacked medical opinion evidence regarding his physical limitations, *see* Pl. Br. at 5-6, ECF No. 11, even though the ALJ stated that she "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." Tr. 21.

In formulating Plaintiff's RFC, the ALJ explicitly considered Plaintiff's testimony regarding his symptoms, Tr. 21-22, the medical evidence in the record, Tr. 22-24, Plaintiff's reported activities of daily living, Tr. 21-22, 23, and, contrary to Plaintiff's argument, the existing medical opinions. Tr. 23-24. This evidence is discussed in further detail below. However, while the ALJ considered the two medical opinions, she did not *rely* on either of them because the initial State Agency consultants from the Maryland Disability Determination Services found insufficient evidence to issue a determination, Tr. 23, and, on reconsideration, the State Agency medical examiner erroneously considered records that did not belong to Plaintiff. Tr. 24. Given the lack of viable medical opinions, Plaintiff contends that the ALJ's physical RFC assessment could not have been premised on substantial evidence and the case should be remanded and additional medical opinions sought. *See* Pl. Br. at 5-7.

Although Plaintiff couches his argument in terms of a lack of substantial evidence, the thrust of his argument is that an ALJ cannot properly formulate an RFC without "record *opinion* evidence" that a claimant retains sufficient residual functional capacity to perform the specified type of work. Pl. Reply Br. at 1, ECF No. 16 (emphasis added). In other words, although in support of the RFC determination the ALJ cited, and relied upon, various evidence in the record,

as discussed below, Plaintiff contends that such evidence cannot support the ALJ's RFC determination without a qualified expert *opinion* that the claimant retains sufficient RFC to perform work.

This is a legal question that the Fourth Circuit has answered, albeit in an unpublished opinion. In *Felton-Miller v. Astrue*, the Fourth Circuit held that an RFC "is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record," and an ALJ is "not required to obtain an expert medical opinion as to [a claimant's] RFC." 459 F. App'x 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c) & S.S.R. 96–8p, https://www.ssa.gov/OP_Home/rulings/di/01/SSR96-08-di-01.html); *see also Koonce v. Apfel*, 166 F.3d 1209 (4th Cir. 1999) (table) ("The determination of a claimant's RFC and the application of vocational factors are reserved to the ALJ, who is not bound by medical opinion on these subjects."); *Roshelle S. B. v. Kijakazi*, No. 21-cv-2842-BAH, 2022 WL 4448924, at *3 (D. Md. Sept. 23, 2022) (providing that "it is also clear that the RFC assessment lies squarely with the ALJ, not with any medical provider/examiner") (quoting *Jones v. Saul*, No. 20-cv-00437, 2021 WL 1015821, at *14 (S.D.W. Va. Feb. 23, 2021); 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity.").

Having determined that the law does not necessarily require an RFC determination to be supported by a medical opinion that specifically goes to the RFC question, the Court must still determine whether the ALJ's RFC determination is supported by substantial evidence. An ALJ must determine a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). While a claimant has the burden of providing the evidence used to make the RFC, *id.*, "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence

submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). "The pertinent inquiry is 'whether the record contained sufficient medical evidence for the ALJ to make an informed decision'" regarding the claimant's impairments. *Craft v. Apfel*, 164 F.3d 624 (4th Cir. 1998) (table) (quoting *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989)); *see Britt*, 860 F. App'x at 262 ("Meaningful review [of an RFC] is frustrated—and remand necessary—only where 'we are unable to fathom the [ ] rationale in relation to evidence in the record.'") (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

      Here, the ALJ discussed the evidence reflecting Plaintiff's continued abilities to perform various activities of daily living, including that Plaintiff's hands were painful and swollen and he had no grip strength; he could lift heavy objects for about 30 seconds and light ones for a minute; he could not type because of pain; he could drive and run errands for about a half hour but gets pain in his right leg while driving; he can dress himself; he can prepare food, although he buys prepared ingredients to avoid having to chop; he can walk for about a third of a mile; he can do laundry; and he can carry grocery bags two at a time. Tr. 21-22. Perhaps most importantly with respect to the ALJ's RFC determination, the ALJ noted that Plaintiff admitted to having been working, over an extended portion of the period in which he claimed to have been disabled and unable to work, constructing a house himself—at various times in 2021 "working physically all day," and in 2022 "going up and down [a] ladder frequently recently." Tr. 23, 484, 505, 553-54, 593.

      The ALJ also considered Plaintiff's medical records including that: (1) Dr. Mark Siveiri's records "do not appear to contain objective clinical signs" and that a 2018 medical marijuana consultation "does not contain any objective findings," Tr. 22, 311, 316, 317-320, 414-16; (2) in

April 2019 Plaintiff's primary care provider found normal gait, normal strength, and no edema, Tr. 22, 459-64; (3) in June 2019 and December 2019 Plaintiff's medical providers again made largely unremarkable and normal exam findings, Tr. 22, 466-79; (4) in June 2020 Plaintiff's orthopedist confirmed he had mild carpal tunnel syndrome but that Plaintiff did not follow up for further treatment, Tr. 22, 627-29, 640-42; (5) a May 2021 exam showed some tenderness to palpation and spasm in his left neck and cervical paraspinal muscles, Tr. 23, 484-89; (6) in August 2021 a rheumatologist found bony overgrowth over some finger joints, some crepitus in Plaintiff's knees, and lumbar tenderness, but that Plaintiff did not exhibit any abnormal joint signs like tenderness, swelling, effusion, or limitation of range of motion, and diagnosed him with early osteoarthritis in his hands, Tr. 23, 504-08; (7) Plaintiff did not seek further treatment for hand pain and numbness but did see the rheumatologist again for finger pain after an accident, Tr. 23, 630-39; (8) there were no records of physical therapy or steroid injections, Tr. 23; and (9) Plaintiff had been prescribed marijuana, a muscle relaxer, hydroxychloroquine, naltrexone, and meloxicam, Tr. 23, 480-83, 505. The ALJ ultimately concluded that Plaintiff's "physical exams [were] largely unremarkable except for some tenderness in his neck and back, and some scattered abnormal signs relating to his upper extremities." Tr. 24.

    Finally, the ALJ did consider the two medical opinions in the record that addressed the RFC question, specifically the initial evaluations by Drs. Jack Hutcheson and Howard Leizer and the reconsideration by Dr. Lawrence Schaffzin. Tr. 66-88. The ALJ concluded, however, that there was no basis for relying on them because: (1) the initial State Agency medical and psychological consultants found the evidence insufficient to issue a determination, Tr. 23, 68-75; and (2) the State Agency medical examiner at reconsideration "incorrectly cited medical evidence belonging to a different person that had been erroneously included in the file" and the

examiner's conclusion that Plaintiff could perform "medium exertional activities and frequent postural movements" was inconsistent with the record. Tr. 24, 76-87.

Plaintiff does not argue that there are records contrary to the ALJ's findings or that the ALJ failed to consider relevant records. The Court concludes that the ALJ applied the correct legal standards; the ALJ's explanation for her RFC assessment shows that it was supported by substantial evidence; and the Court is easily able to understand the ALJ's rationale in relation to the record evidence. *Britt*, 860 F. App'x at 262. Thus, the Court must affirm the final decision of the SSA.

The majority of Plaintiff's argument is based on analogizing his case to *Keel v. Berryhill,* from the Middle District of North Carolina, where the court remanded a social security case because "substantial evidence fail[ed] to support the ALJ's physical RFC determination." No. 17-cv-387, 2018 WL 4087940, at *3 (M.D.N.C. Aug. 27, 2018), *report and recommendation adopted*, No. 17-cv-387, 2018 WL 5447686 (M.D.N.C. Sept. 11, 2018). But *Keel* is readily distinguishable from the present case.

In *Keel*, the court acknowledged that "in setting the RFC, the ALJ is not required to obtain a medical opinion as to the RFC, since the RFC is an administrative assessment," but concluded that substantial evidence did not support the ALJ's RFC assessment "in the particular circumstances presented" there because:

> there were no opinions of treating, examining, or nonexamining physicians on which to rely, and the ALJ nevertheless made various medical determinations regarding the nature of Plaintiff's conditions, and then explicitly based the RFC determination on "medical source opinion evidence," when there was no medical source opinion evidence in the record related to Plaintiff's physical impairments.

2018 WL 4087940, at *5.

Specifically, the ALJ in *Keel* "made numerous medical determinations and findings" that were not supported by the record, including the *Keel* ALJ's finding that Keel's Epstein-Barr virus was episodic rather than chronic, and incorrectly opining that the fact Keel had not been prescribed antibiotics or steroids was "simply not consistent for someone who has recurrent severe and disabling infections." *Id.* at *4. Moreover, although "the ALJ [in *Keel*] stated that she 'considered the *medical source opinion evidence* to be *a major factor* in assessing [Plaintiff's] limitations and evaluating the credibility of her subjective complaints,'" that could not have been the case since there was no relevant "medical source opinion evidence" in the record. *Id.* at *5. While the ALJ "specifically explained that the RFC was based on 'the significant weight assigned to the opinions of Dr. Arnold and Dr. Estock,'" the court noted that these two physicians evaluated Keen's mental impairments, *not* his physical impairments even thought it was Keen's physical impairments that were at issue. *Id.*

Thus, the issue in *Keel* was not that there was no medical opinion evidence, but that the ALJ improperly rendered unsupported medical opinions and explicitly stated she relied on evidence that was inapplicable to her analysis. Here, the ALJ did not render her own medical opinions and instead properly reached an RFC determination after considering the relevant medical and other evidence in the record. 20 C.F.R. § 404.1545(a)(3). The ALJ recounted the findings of Plaintiff's medical providers and did not try to interpret the raw medical data or contradict the physician's interpretations thereof. Tr. 22-24. Moreover, contrary to Plaintiff's argument, the ALJ here accurately stated that she considered the medical opinion evidence, even though, ultimately, she correctly chose not to rely on it. The Court finds Plaintiff's reliance on *Keel* unpersuasive under the facts of this case.

## V. CONCLUSION

For these reasons, the final decision of the SSA is affirmed pursuant to sentence four of 42 U.S.C. § 405(g) and Plaintiff's request for a remand is denied.

An appropriate order follows.

Date:   February 20, 2024                       /s/
                                         Adam B. Abelson
                                         United States Magistrate Judge